IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VETHA MAE ANDERSON,           )<br>                                                          )<br>           **Plaintiff,**         )<br>                                                          )<br>v.                                                      )<br>                                                          )<br>KILOLO KIJAKAZI,                     )<br>**Acting Commissioner of the Social** )<br>**Security Administration,**          )<br>                                                          )<br>           **Defendant.**         ) | Case No. CIV-22-89-GLJ |

## OPINION AND ORDER

Claimant Vetha Mae Anderson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

## Claimant's Background

Claimant was fifty-eight years old at the time of the administrative hearing (Tr. 47). She earned her GED, and has previously worked as a mail carrier and file clerk (Tr. 60, 214). Claimant alleges she has been unable to work since September 1, 2018, due to degenerative disc disease, fibromyalgia, osteoarthritis, peripheral neuropathy, and high blood pressure. (Tr. 213).

## Procedural History

Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 26, 2019. Her applications were denied. ALJ Elisabeth McGee conducted an administrative hearing and determined that Claimant was not disabled in a written decision dated June 10, 2021. (Tr. 24-34). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## The ALJ's Decision

The ALJ made her decision at steps four and five of the sequential evaluation. At step two, she found Claimant had the severe impairments of bilateral sciatica and trochanter bursitis, as well as the nonsevere impairments of minimal degenerative disc disease of the lumbar spine, cervical spine within normal limits, very mild degenerative joint disease of the left hip, mild degenerative joint disease of the right hip, removed squamous cell cancer

3

lesion on the right hand, resolved vertigo/idiopathic peripheral neuropathy, hypertension, and GERD. (Tr. 26-27). At step three, she determined that Claimant did not meet a Listing. At step four, she found that Claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except she could only frequently stoop and crouch. (Tr. 27). The ALJ thus concluded that Claimant could return to her past relevant work as a mail carrier and file clerk, or alternatively, that she was not disabled because there was other work she could perform in the economy, *e. g.*, kitchen helper, hand packager, and packing machine operator. (Tr. 32-34).

## Review

Claimant contends that the ALJ erred by (i) failing to properly evaluate her RFC, including physician opinions in the record and failing to properly account for all her impairments, which resulted in (ii) failing to properly identify work she could perform. The Court agrees that the ALJ erred in assessing Claimant's RFC, and the decision should therefore be reversed.

The relevant medical evidence in this case reveals that on August 20, 2018, shortly before the September 1, 2018 alleged onset date, Claimant's both lower extremities revealed intact motor and sensory function, full range of motion of both hips, good stability, and negative straight leg raise tests, but she was tender on both sides at L5-S1. (Tr. 304). She was assessed with bursitis of bilateral hips and given an injection in each. (Tr. 304-305).

Radiological testing, including a May 2018 x-ray of the lumbar spine, had previously revealed bilateral facet arthrosis at L5-S1 without spondylolisthesis, as well as

atherosclerosis. (Tr. 312). A handwritten note indicates Claimant was told she had some arthritis in her back and needed an MRI, which was performed in June 2018 and showed minimal degenerative changes involving the lumbar spine without disc herniations, and no high-grade central canal or neural foraminal stenosis. (Tr. 310).

From February to April 2019, Claimant underwent regular chiropractic treatment approximately twice a week. She initially reported pain levels at 7 or higher, out of a scale of ten, but she noted improvement and consistently reported pain levels of 2 out of 10 for her last few visits. (Tr. 354-369). On May 1, 2019, Claimant's gait had improved and was not limiting a return to work, but her lumbar spine pain had increased with standing and ambulation, as well as with prolonged sitting. (Tr. 526). Upon exam, her gait was noted as "mild antalgic," and she had normal range of motion of hip and lumbar, but was tender over trochanters bilaterally and the lumbar spine had mild to moderate B paraspinal spasm. (Tr. 526).

In December 2019, Claimant was treated at Family Medical Clinic by treating physician Janet Garvin. (Tr. 633). Dr. Garvin noted Claimant had limited active range of motion with left lateral bending upon exam, as well as pain of the left and right paraspinal muscles and positive straight leg raise tests. (Tr. 634).

On December 18, 2019, Physician Assistant Kelsey Haughton, PA-C of Arkansas Occupational Health Clinic, submitted a Medical Report regarding Claimant's physical impairments. She recorded reduced range of motion of the back, neck, hips, and right shoulder. (Tr. 381-383). She also completed a "Lumbosacral Spine" sheet, indicating further reduction of flexion as well as the presence of pain, and a reduced range of motion

of the cervical spine and the presence of pain. (Tr. 384). Ms. Haughton noted Claimant's gait was slightly antalgic and slow given her reports of hip pain, but that she did not require a crutch or cane and had good balance and coordination. Additionally, Ms. Haughton's impression indicated Claimant had desiccated discs on her MRI, along with degenerative changes throughout her lumbar spine and in her right hip (worse than the left), and that she had some limited range of motion in her right shoulder, neck, low back, and hips. (Tr. 387). That same month, an x-ray of the lumbar spine revealed no acute radiographic abnormalities. (Tr. 583).

On January 13, 2020, Claimant's treating physician Janet Garvin completed a Mental RFC assessment, checking a box indicating that she was not treating Claimant for a mental condition, but then proceeding to write, under a question as to Claimant's diagnosis, that Claimant has "chronic pain and may have depression as a result." (Tr. 403-404).

In February 2020, Claimant saw Dr. Thomas Cheyne and reported low back and bilateral leg pain. Dr. Cheyne noted she had a normal gait, was nontender in the neck, and had full range of motion of the head and neck in all directions, as well as full range of motion of shoulders, elbows, wrists, hips, knees, and ankles. He noted she was tender in the low back and had mild decreased sensation in both lower legs, and also had "mildly positive" result of bilateral straight leg raise tests. (Tr. 496). He assessed her with chronic bilateral sciatica. (Tr. 496).

At a May 5, 2020 appointment at Clinical Neuroscience Associates, Inc., Claimant reported her gait had worsened along with low back pain and bilateral hip pain. (Tr. 521).

Dr. Jon Gustafson, M.D., noted the process was ongoing and that Claimant had been advised to try a course of physical therapy before considering surgery. (Tr. 523). He noted her gait was stable, with "no further improvement," and noted a diagnosis of unspecified abnormalities of gait and mobility, as well as bilateral trochanteric bursitis and low back pain. (Tr. 524, 608).

A September 2020 x-ray of the cervical spine was unremarkable. (Tr. 569). Claimant saw Dr. Garvin that same month, and she assessed the claimant with myalgia, cervicalgia, and squamous cell carcinoma of skin of right upper limb, including shoulder. (Tr. 629). Dr. Garvin noted Claimant had active range of motion with extension to 50 degrees. (Tr. 629).

Claimant returned to Dr. Cheyne in December 2020 for follow-up on her bilateral sciatica, and he stated he continued to believe it was sciatic pain and that surgery was not indicated. He recommended treatment with injections at a pain clinic, to be followed by facet injections and/or SI joint injections in the first round did not produce adequate relief. (Tr. 610, 637). An MRI of the lumbar spine that same month showed mild degenerative changes in the lumbar spine throughout. (Tr. 616-619, 638-639).

Upon reviewing the evidence back in August 2019, state reviewing physician Dr. David Coffman found there was insufficient evidence to evaluate her claim. (Tr. 83). Upon reconsideration in December 2019, Dr. Scott Newton, who had the benefit of PA Haughton's assessment, determined Claimant could perform light work, but only frequently stoop and crouch and no further limitations. (Tr. 98-99).

In her written opinion at step four, the ALJ summarized Claimant's hearing testimony, as well as much of the medical evidence in the record. She found the claimant's statements not entirely consistent with the medical records, noting that although Claimant sought ongoing treatment for hip and back pain, imaging consistently showed only mild findings and physical exams varied as to whether she had a normal gait and a full range of motion. (Tr. 30). The ALJ noted that her conclusion was further bolstered by Claimant's activities of daily living as well as extended trips to Alaska during the review period, and that her pain appeared to be "controlled at least in part with prescription medications." (Tr. 31). As to the state reviewing physician opinions, the ALJ found Dr. Coffman's conclusion that Claimant could perform light work to be unpersuasive in light of the imaging results in the record. As to PA Haughton's opinion, the ALJ found her observations and assessment to be consistent with the treatment records and persuasive as to a finding that Claimant has some physical limitations. (Tr. 32). The ALJ rejected Dr. Garvin's statements as to Claimant's mental health, finding it to be speculation. (Tr. 32). She thus concluded that Claimant was not disabled and there was work she could perform.

Claimant contends the ALJ erred in assessing her RFC, including both the evidence as to her limitations and the opinion evidence. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant

evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). Here, the ALJ specifically found that the claimant could perform "'medium' work as defined in 20 C.F.R. §§ 404.1567(c) and 416.96(c)," but only frequently stoop and crouch.

The regulatory definition states that medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Furthermore, social security regulations state that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which requires precision use of the fingers as well as use of the hands and arms." Soc. Sec. Reg. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

Although the ALJ *did* include two postural limitations related to the claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such limitations account for *each* of the claimant's severe impairments, *i.e.*, bilateral sciatica and trochanter bursitis. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ

9

concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Additionally, it is patently unclear how the claimant could perform the lift/carry requirements *or* the sitting, standing, and walking requirements of medium work given the evidence in the record as to her combination of impairments including, at the very least, her worsening back and hip problems, mild though the imaging may be. The ALJ has pointed to no evidence in the record indicating Claimant has this capability (indeed, examining providers have deemed otherwise), and "it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *2; *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted].

Further, the Court agrees that the ALJ erred in assessing the opinions from Dr. Newton and PA Haughton. Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors.

*See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ did not properly assess these factors for either Dr. Newton or PA Haughton. The ALJ

11

purported to find PA Haugton's observations and assessments (including objective range of motion findings) both consistent with treatment records and persuasive. Dr. Scott then relied on her assessment, along with additional x-ray findings (indicating mild degenerative changes), to find she could only perform light work with additional postural limitations. the ALJ purported to find his opinion persuasive, but failed to account for or discuss why she did not adopt these persuasive findings. It was error to pick and choose among the evidence in this way. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted).

This is particularly important where the ALJ must consider both severe and nonsevere impairments in formulating the claimant's RFC, and as here, the claimant had at least four additional nonsevere impairments. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

In light of these errors, the Court finds the ALJ has failed to properly support her findings as to Claimant's RFC. The Court must be able to follow the logic, and here it cannot. *See Jagodzinski*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). This error further calls into

question the ALJ's findings that Claimant could return to her past relevant work (medium and light work with less than occasional medium work) or perform any of the three medium jobs identified at step five. (Tr. 32-34). Any arguments Claimant has as to additional postural limitations, *i.e.,* a sit/stand option, should be addressed on remand.

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed, and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record in assessing the claimant's RFC. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 21st day of July, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**